IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE, *et al.*,

        Plaintiffs,

    v.

CATHERINE E. LHAMON, in her official
capacity as Assistant Secretary for Civil Rights,
United States Department of Education, *et al.*,

        Defendants.

Case No. 1:16-cv-01158 (RC)

### DECLARATION OF PLAINTIFF JOHN DOE IN
### SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I, JOHN DOE[1], pursuant to 28 U.S.C. § 1746, hereby declare, under penalty of perjury,

that the following is true to the best of my knowledge and recollection:

1. I am a plaintiff in the above captioned lawsuit.  Pursuant to the Court's order granting my

   motion to proceed under a pseudonym, I am identified in the lawsuit as "John Doe."

2. I have personal knowledge of the facts set forth in this declaration.  If called as a witness,

   I could and would testify as set forth below.

3. I am a citizen and resident of the Commonwealth of Virginia.

4. In the fall of 2012, I enrolled in the J.D. program at the University of Virginia ("UVA").

5. On March 6, 2015, two months before I was set to graduate, another UVA law student,

   identified in this lawsuit as Jane Roe, filed a sexual misconduct complaint against me

   based on an incident that had allegedly taken place on August 23, 2013.

---

[1] John Doe is not my real name, but a pseudonym that I am using pursuant to the Court's order
granting my motion to proceed under a pseudonym.

6.  Ms. Roe alleged that due to alcohol consumption, she could not effectively consent to sexual activity that she engaged in with me on August 23, 2013. I responded that Ms. Roe did not even appear to be intoxicated that night, much less incapacitated.

7.  At the time Ms. Roe filed her complaint, I was slated to graduate in just two months and begin a job in the Washington, D.C. office of a prominent national law firm.

8.  The investigation and adjudication of the allegations lasted nearly a year.

9.  Thus, despite having completed all of my coursework by May of 2015, UVA withheld my degree while the investigation progressed, and my offer of employment was suspended pending receipt of my degree.

10. My offer of employment was never re-extended, even after I received my degree.

11. On January 20, 2016, Ms. Roe's claims against me were adjudicated during a nine-hour hearing.

12. Attached to this declaration as Exhibit A is a true and accurate copy of a document entitled UVA's Policy and Procedures for Student Sexual Misconduct Complaints. UVA provided me this document after Ms. Roe filed her complaint, and informed me that it would govern the adjudication of Ms. Roe's complaint against me.

13. UVA's Policy and Procedures for Student Sexual Misconduct Complaints called for the adjudicator to use a "preponderance of the evidence" standard in adjudicating Ms. Roe's complaint against me, which the policy notes is required by the Department of Education's Office for Civil Rights ("OCR"). *See also* Ex. A at 14 (specifically noting that OCR "has interpreted Title IX to require schools to evaluate evidence of alleged Sexual Misconduct under a 'preponderance of the evidence' standard and that is the standard adopted by this Policy").

14.   Attached to this declaration as Exhibit B is a true and accurate copy of the transcript of the portion of the hearing in my case in which the adjudicator announced her decision.

15.   The adjudicator—a retired justice of the Supreme Court of Pennsylvania—called the matter a "very close" and "very difficult case." *See also* Ex. B at 1:15-16, 4:5.

16.   The adjudicator found me responsible, she said, because the evidence "slightly" tipped in favor of responsibility. *See also* Ex. B at 3:17-20.

17.   The adjudicator found me responsible, she said, because she was "require[d]" by "the Office of Civil Rights and the Department of Education" to apply "the weakest standard of proof" available—preponderance of the evidence—which is satisfied whenever the evidence is "tipped very slightly" in favor of responsibility. *See also* Ex. B at 1:17-23.

18.   The adjudicator also explained that two other commonly used evidentiary standards—the "clear and convincing" evidence standard and the "reasonable doubt" standard—would "tip the scale much more," thereby indicating that, but for UVA's mandated use of the preponderance standard, I would not have been found responsible. *See also* Ex. B at 1:21-23.

19.   After explaining why, in her view, the evidence before her "ma[d]e it slightly more likely than not" that I had not properly obtained "effective consent" from Ms. Roe given her intoxication, the adjudicator again emphasized, at the end of her ruling, that the case was a close one.  She stated that its closeness "w[ould] be reflected by [her] in any sanction that [she] impose[d]." *See also* Ex. B at 4:6-10.

20.   Attached to this declaration as Exhibit C is a true and accurate copy of the letter that the adjudicator provided me on January 27, 2016, memorializing and explaining her responsibility finding and sanctioning decision.

21.   In her January 27, 2016, letter, the adjudicator confirmed that "[f]irst and foremost" in her rationale for finding me responsible "[was] the requirement that [she] use the preponderance of the evidence standard." *See also* Ex. C at 3.

22.   In her January 27, 2016, letter, the adjudicator noted that, after consulting with UVA's Title IX coordinator, she had decided that my sanction would be four months of counseling and a lifetime ban from all UVA property and activities. *See also* Ex. C at 4.

23.   I was required to disclose the adjudicator's January 27, 2016, finding on my application for a license to practice law in Virginia.

24.   I took the Virginia State Bar exam on July 28-29, 2015, and passed.

25.   In March of 2016, UVA agreed to allow me to complete the counseling element of my sanction on an accelerated basis so that I could appear before the Virginia State Bar's June "character and fitness" board if asked.

26.   On March 30, 2016, UVA Law School awarded me my J.D. degree.

27.   In June of 2016, I appeared before the Virginia State Bar's character and fitness board. On June 20, I was approved by that board for the practice of law in Virginia.  The Virginia State Bar licensed me to practice law on July 15, 2016.

28.   I am currently applying for admission to the District of Columbia Bar and will be required to disclose the adjudicator's January 27, 2016, finding to them.

29.   Because I was not permitted to practice law until very recently, I have not been able to support myself as an attorney or fully meet my financial obligations.

30.   As a direct result of the finding by UVA, I

    a.   have been banned for life from all UVA property and activities, *see also* Ex. C at 4; and

b.  have been unjustly labeled as someone who has committed sexual misconduct,

    requiring me to disclose and explain the adjudicator's January 27, 2016, finding, for

    the rest of my life, to future employers, future friends, family members, and anyone

    else who asks.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Executed on: October 31, 2016

JOHN DOE[2]

---

[2] As noted above, John Doe is not my real name, but a pseudonym that I am using pursuant to the Court's order.

# Exhibit A

# UNIVERSITY OF VIRGINIA
# POLICY AND PROCEDURES
# FOR STUDENT SEXUAL MISCONDUCT COMPLAINTS

## Students Who May Be Victims of Sexual Misconduct:

Your health, safety, and well-being are the University's primary concern.   If you or someone you know may be the victim of any form of sexual misconduct, you are strongly urged to seek immediate assistance. Assistance can be obtained 24 hours a day, seven days a week, from:

- Police (U.Va., Charlottesville, Albemarle County) · 911
- Sexual Assault Resource Agency (SARA) · (434) 977-7273
- Shelter for Help in Emergency (SHE) · (434) 293-8509
- U.Va. Medical Center Emergency Department · (434) 924-2231

During business hours (8:00 a.m. to 5:00 p.m., Monday through Friday), you are also strongly urged to contact the Dean of Students, who is the designated Title IX coordinator for purposes of this Policy (as hereinafter defined) (by telephone, at 434-924-7429 or 434-924-7133, by email at DeanofStudents@virginia.edu, or in person at the Office of the Dean of Students, Peabody Hall, Second Floor), as soon as reasonably possible to report any sexual misconduct you believe may have occurred.   In addition, Sexual and Domestic Violence Services in the University's Women's Center offers guidance and support in collaboration with the Dean of Students (by telephone, at 434-982-2774, or by email at sdvs@virginia.edu).

This Policy covers complaints of alleged sexual misconduct by University students. If you or someone you know may be the victim of sexual misconduct by a member of the University faculty or staff, you may report such misconduct or file a complaint with the University's Title IX Coordinator, Office of Equal Opportunity Programs ("EOP") (by telephone, at 434-924-3200, by email at UVAEOP@virginia.edu, or in person at the EOP Office, Washington Hall, Hotel B, East Range). Detailed information about such complaints and the procedures for their resolution can be found at http://www.virginia.edu/eop/complaint.html. Further information about Title IX and sex discrimination in education is available from the Office for Civil Rights, 400 Maryland Avenue, SW, Washington, DC 20202-1100 (by Customer Service Hotline: 800-421-3481; fax: 202-453-6012; TDD: 877-521-2172; email: OCR@ed.gov; or on the web, at http://www.ed.gov/ocr).

For extensive information about the many forms of sexual misconduct, what to do immediately following a sexual assault, and the numerous resources available at the University and in the local community, please consult the University's Sexual Violence Education & Resources website, www.virginia.edu/sexualviolence.

## I.   INTRODUCTION

### A.   Overview and Purpose.

Sexual Misconduct, as defined by this Policy and Procedures for Student Sexual Misconduct Complaints (this "Policy"), comprises a broad range of behavior that will not be tolerated in the University's community of trust. For purposes of this Policy, "Sexual Misconduct" includes Sexual Exploitation, Sexual Harassment, Non-Consensual Sexual Contact, and Non-Consensual Sexual Intercourse, each as more fully defined below. Sexual Misconduct violates University policy and Federal civil rights law and may also be subject to criminal prosecution. The University is committed to fostering a community that promotes prompt reporting of all types of Sexual Misconduct and timely and fair resolution of Sexual Misconduct complaints. Creating a safe environment is the responsibility of all members of the University community.

As a recipient of Federal funds, the University is required to comply with Title IX of the Higher Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX")[1], which prohibits discrimination on the basis of sex in education programs or activities. Sexual Misconduct, as defined in this Policy, is a form of sex discrimination prohibited by Title IX. The University of Virginia is committed to providing programs, activities and an educational environment free from sex discrimination.

As a public institution, the University also must provide due process to students accused of Sexual Misconduct. This Policy is designed to provide a fair process for both parties while also ensuring a complainant's protections under Title IX. Consistent with due process, an accused student is presumed innocent until proven otherwise under this Policy.

The University is also required and committed to upholding the First Amendment of the United States Constitution. Nothing in this policy is intended to abridge the rights or freedoms guaranteed by the First Amendment.

### B.   Definitions.

"Clery Act" means the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S.C. Section 1092(f); 34 C.F.R. Part 668.46.

"Dean" means the Dean of Students and his or her designee. The University has designated the Dean as the Title IX Coordinator for purposes of this Policy.

"Dean's Office" means the Office of the Dean of Students, located in the University's Peabody Hall, Second Floor.

---

[1] Title IX requires that the University have a statement of policy and procedure for handling complaints of Sexual Misconduct. 20 U.S.C. 1092(f)(7) and 1681(a). This Policy constitutes that statement.

"Effective Consent" means words or actions that show a knowing and voluntary agreement to engage in mutually agreed-upon sexual activity. Effective Consent cannot be gained by Force, by ignoring or acting in spite of the objections of another, or by taking advantage of the Incapacitation of another, where the accused student knows or reasonably should have known of such Incapacitation. Effective Consent is also absent when the activity in question exceeds the scope of Effective Consent previously given. In addition, certain states have designated a minimum age under which a person cannot give "Effective Consent." [2]

"FERPA" means the Family Educational Rights and Privacy Act, 20 U.S.C. Section 1232g; 34 C.F.R. Part 99.

"Force" means physical force, violence, threat, intimidation or coercion.

"Incapacitation" means the physical and/or mental inability to make informed, rational judgments. States of Incapacitation include, without limitation, sleep, blackouts, and flashbacks. Where alcohol [or other drug] is involved, one does not have to be intoxicated or drunk to be considered Incapacitated. Rather, Incapacitation is determined by how the alcohol consumed impacts a person's decision-making capacity, awareness of consequences, and ability to make informed judgments.[3] The question is whether the accused student knew, or a sober, reasonable person in the position of the accused student should have known, that the complainant was Incapacitated. Because Incapacitation may be difficult to discern, students are strongly encouraged to err on the side of caution; i.e., when in doubt, assume that another person is Incapacitated and therefore unable to give Effective Consent. Being intoxicated or drunk is never a defense to a complaint of Sexual Misconduct under this Policy.

"Investigators" mean the individuals designated by the Vice President to conduct investigations of alleged Sexual Misconduct, and to determine whether or not there is good cause to grant a hearing, all as more particularly described in Section 4, below.

"Non-Consensual Sexual Contact" means Sexual Contact that occurs without Effective Consent.

"Non-Consensual Sexual Intercourse" means Sexual Intercourse that occurs without Effective Consent.

"Non-University Conduct" means conduct that occurred other than on University-owned or leased property, at any University sanctioned function, at the permanent

---

[2] See Va. Code §18.2-63 for the age of consent under Virginia law: http://leg1.state.va.us/000/cod/18.2-63.HTM.
[3] Sokolow, Brett A., Lewis, W. Scott, Schuster, Saundra K., *NCHERM Institute on Responding to Campus Sexual Misconduct*. 2010, p. 49.

or temporary local residence of a University student, faculty member, employee, or visitor, or elsewhere in the City of Charlottesville or Albemarle County.

"Sexual Contact" means the deliberate touching of a person's intimate parts (including genitalia, groin, breast or buttocks, or clothing covering any of those areas), or using Force to cause a person to touch his or her own or another person's intimate parts.

"Sexual Exploitation" means taking sexual advantage of another person without Effective Consent, and includes, without limitation, causing or attempting to cause the Incapacitation of another person in order to gain a sexual advantage over such other person; causing the prostitution of another person; recording, photographing or transmitting identifiable images of private sexual activity and/or the intimate parts (including genitalia, groin, breasts or buttocks) of another person; allowing third parties to observe private sexual acts; engaging in voyeurism; and/or knowingly or recklessly exposing another person to a significant risk of sexually transmitted infection, including HIV.

"Sexual Harassment" means unwelcome conduct, based on sex or on gender stereotypes, which is so severe or pervasive that it unreasonably interferes with a person's University employment, academic performance or participation in University programs or activities **_and_** creates a working, learning, program or activity environment that a reasonable person would find intimidating, hostile or offensive. Sexual Harassment may include, for example, unwelcome sexual advances, requests for sexual favors, and acts of sexual violence. In evaluating any complaint of Sexual Harassment, the perceived offensiveness of a particular expression, standing alone, is not sufficient by itself to constitute Sexual Harassment. The conduct in question must be objectively intimidating, hostile or offensive and interfere with a person's right to equally participate in programs and activities of the University. The exclusive purpose of this Policy is to protect students from sex discrimination, consistent with both federal regulatory law and the requirements of the First Amendment to the United States Constitution.

"Sexual Intercourse" means penetration (anal, oral or vaginal) by a penis, tongue, finger, or an inanimate object.

"Sexual Misconduct" is a broad term encompassing "Sexual Exploitation," "Sexual Harassment," "Non-Consensual Sexual Contact," and "Non-Consensual Sexual Intercourse," as defined in this Policy. Sexual Misconduct can occur between strangers or acquaintances, including people involved in an intimate or sexual relationship. Sexual Misconduct can be committed by men or by women, and it can occur between people of the same or different sex.

"Sexual Misconduct Board" means the standing group of students, faculty and staff appointed by the Vice President to hear complaints of Sexual Misconduct.

"Standards of Conduct" means the University's Standards of Conduct, as enforced by the University Judiciary Committee.

"University" means the University of Virginia.

"Vice President" means the Vice President and Chief Student Affairs Officer and his or her designee.

"Vice President's Office" means the Office of the Vice President and Chief Student Affairs Officer.

II.  **JURISDICTION; TIMING; RETALIATION AND RELATED MISCONDUCT; CRIMINAL PROCEEDINGS**

    A.   Jurisdiction.

        1.  Personal Jurisdiction.  Any person may file a complaint of Sexual Misconduct against a "University student" under this Policy. A "University student" means any student who is registered or enrolled at the University (a) at the time of the alleged Sexual Misconduct (including Sexual Misconduct that is alleged to have occurred during any academic recess, provided that there is an expectation of such student's continued enrollment at the University), _and_ (b) at the time that the Dean prepares and delivers to the Investigators a formal complaint against such student pursuant to Section III.B, below.

        2.  Geographic Jurisdiction.  This Policy applies to any allegation of Sexual Misconduct against a University student, regardless of where the alleged Sexual Misconduct occurred.  Although there is no geographical limitation to invoking this Policy, Sexual Misconduct that is alleged to have occurred at a significant distance from the University may be more difficult to investigate.  In addition, with respect to any complaint (a) by a person who is not a member of the University community, and (b) relating to Non-University Conduct, the University reserves the right to determine, in its sole discretion, whether the conduct described in the complaint constitutes a sufficient risk to the University community to warrant processing the complaint.

    B.   Timing of Complaints and Availability of Procedures.  So long as there is personal jurisdiction over the accused student pursuant to Section II.A.1, above, there is no time limit to invoking this Policy in responding to complaints of alleged Sexual Misconduct.  Nevertheless, students are encouraged to report alleged Sexual Misconduct immediately in order to maximize the University's ability to obtain evidence, and conduct a thorough, impartial and reliable investigation.  Failure to promptly report alleged Sexual Misconduct may result in the loss of relevant evidence and

witness testimony, and may impair the University's ability to enforce this Policy.

Where the accused student is a degree candidate, it is the responsibility of the complainant to consult with the Dean's Office concerning the accused student's intended date of graduation and to file a complaint in a timely manner where personal jurisdiction over the accused student would otherwise be lost pursuant to Section II.A.1, above. The conferral of a degree may deferred until proper resolution of any Sexual Misconduct charges, provided that a hearing opportunity will be scheduled for the earliest practicable date that may reasonably accommodate the parties and their witnesses.

C.   <u>Retaliation</u>.  It is a violation of University policy to retaliate against any person making a complaint of Sexual Misconduct or against any person cooperating in the investigation of (including testifying as a witness to) any allegation of Sexual Misconduct.  For these purposes, "retaliation" includes intimidation, threats, harassment, and other adverse action threatened or taken against any such complainant or third party. Retaliation should be reported promptly to the Sexual Misconduct Board Chair and may result in disciplinary action independent of the sanction or interim measures imposed in response to the underlying allegations of Sexual Misconduct.

D.   <u>Other Related Misconduct</u>.  In accordance with this Policy, the Sexual Misconduct Board is empowered to hear allegations of, and to impose sanctions for, Sexual Misconduct *and* any violations of the <u>University's Standards of Conduct</u> directly related to the alleged Sexual Misconduct or any alleged violations of this Policy.  Such related misconduct may include, without limitation, violations of the rules of privacy as articulated herein, violations of the Dean's directive(s) discussed in Section III.D, below, and/or violations of other Standards of Conduct that occurred in the course of the alleged Sexual Misconduct.  It is not the practice of the University to pursue disciplinary action against a complainant or witness for his or her improper use of alcohol or drugs (<u>e.g.</u>, underage drinking), provided that such student is acting in good faith as a complainant or witness to the events of the alleged Sexual Misconduct.

University students who appear before the Sexual Misconduct Board, whether as parties to the proceedings or as witnesses, are expected to provide truthful testimony in accordance with the University's Honor Code.

E.   <u>Effect of Criminal Proceedings</u>.  Because Sexual Misconduct may constitute *both* a violation of University policy *and* criminal activity, the University encourages students to report alleged Sexual Misconduct

promptly to local law enforcement agencies. Criminal investigations may be useful in the gathering of relevant evidence, particularly forensic evidence. Because the standards for finding a violation of criminal law are different from the standards for finding a violation of this Policy, criminal investigations or reports are *not* determinative of whether Sexual Misconduct, for purposes of this Policy, has occurred. In other words, conduct may constitute Sexual Misconduct under this Policy even if law enforcement agencies lack sufficient evidence of a crime and therefore decline to prosecute. In such cases, the complainant may not initially understand the results of the criminal investigation, the nature of criminal procedure, or the grounds for the law enforcement decision not to prosecute. The complainant in such cases may request that the Dean identify a senior member of the Dean's Office or of the Vice President's Office to assist the complainant in seeking and attending a meeting with the local prosecutor to gain an understanding of the decision to decline a prosecution.

The filing of a complaint of Sexual Misconduct under this Policy is independent of any criminal investigation or proceeding, and (except that the University's investigation may be delayed temporarily while the criminal investigators are gathering evidence) the University will not wait for the conclusion of any criminal investigation or proceedings to commence its own investigation and take interim measures to protect the complainant and the University community, if necessary, as described in Section III.D, below.

## III.    THE PROCESS: INITIAL STEPS

A. <u>Intake Meeting with Complainant</u>.  Upon receipt of notice of any allegation of Sexual Misconduct, the Dean will first schedule an individual intake meeting with the complainant in order to provide to the complainant a general understanding of this Policy and to identify forms of support or immediate interventions available to the complainant. (Detailed information about sources of support and immediate interventions available to the complainant within the University and the local community is also available at the University's Sexual Violence Education & Resources website, http://www.virginia.edu/sexualviolence/sexualassault/.)  The intake meeting may also involve a discussion of any accommodations that may be appropriate concerning the complainant's academic, University housing, and/or University employment arrangements.

B. <u>Complainant Wishes to Pursue Formal or Informal Resolution</u>.  At the initial intake meeting with the complainant, the Dean will seek to determine how the complainant wishes to proceed, *i.e.,* whether the complainant wishes to pursue Formal Resolution, Informal Resolution or

does not wish to pursue resolution of any kind.  If the complainant wishes to proceed with either Formal or Informal Resolution, the Dean will determine the name of the accused student, and the date, location and nature of the alleged Sexual Misconduct, and will schedule an individual intake meeting with the accused student in order to provide to the accused student a general understanding of this Policy and to identify forms of support or immediate interventions available to the accused student. (Detailed information about sources of support and immediate interventions available to the accused student within the University and the local community is also available at the University's Sexual Violence Education & Resources website, http://www.virginia.edu/sexualviolence/sexualassault/.)

If the complainant wishes to proceed with Formal Resolution, the Dean will promptly prepare and forward a formal complaint to the Investigators for investigation, in accordance with Section IV.C, below.  The formal complaint will set forth the name of the accused student, and the date, location and nature of the alleged Sexual Misconduct.

If the complainant wishes to proceed with Informal Resolution, the Dean will promptly refer the complainant to the Sexual Misconduct Board Chair to initiate Informal Resolution proceedings, in accordance with Section V, below.

C. Complainant Does not Wish to Pursue Resolution or Requests Confidentiality.  If the complainant does not wish to pursue Formal or Informal Resolution and/or requests that his or her complaint remain confidential, Title IX nevertheless requires the University to investigate and take reasonable action in response to the complainant's information. The Dean will inform the complainant, however, that the University's ability to respond may be limited.  The Dean may conduct a preliminary investigation into the alleged Sexual Misconduct and may weigh the complainant's request(s) against the following factors: the seriousness of the alleged Sexual Misconduct; whether there have been other complaints of Sexual Misconduct against the same accused student; and the accused student's right to receive information about the allegations if the information is maintained by the University as an "education record" under FERPA. The Dean will inform the complainant if the University cannot ensure confidentiality.  Even if the University cannot take disciplinary action against the accused student because the complainant insists on confidentiality or that the complaint not be resolved, the Dean reserves the authority to undertake an appropriate inquiry, issue a "no-contact" order, and take other reasonably necessary measures, including the interim measures described in Section III.D, below.

D. <u>Interim Measures</u>. In *all* complaints of alleged Sexual Misconduct, *regardless of whether the complainant wishes to pursue Formal Resolution, Informal Resolution or no resolution of any kind*, the University will undertake an appropriate inquiry and take such prompt and effective action as is reasonably practicable under the circumstances to support and protect the complainant, including taking appropriate interim steps before the final outcome of the investigation and hearing, if any. Accordingly, at or after the intake meeting, the Dean may impose a "no-contact" order, which typically will include a directive that the parties refrain from having contact with one another, directly or through proxies, whether in person or via electronic means, pending the investigation and, if applicable, the hearing. The Dean, as Title IX Coordinator, also may take any further protective action that he or she deems appropriate concerning the interaction of the parties pending the hearing, if any, including, without limitation, directing appropriate University officials to alter the students' academic, University housing, and/or University employment arrangements. When taking steps to separate the complainant and the accused student, the Dean will seek to minimize unnecessary or unreasonable burdens on either party; provided, however, that every reasonable effort will be made to allow the complainant to continue in his or her academic, University housing, and/or University employment arrangements. Violation(s) of the Dean's directive and/or protective actions will constitute related offenses that may lead to additional disciplinary action.

## IV. FORMAL RESOLUTION

A complainant may elect to pursue a formal resolution, which involves a hearing before a panel of the Sexual Misconduct Board, as more particularly described in this Section. Such a hearing is also referred to as "Formal Resolution."

A. <u>The Sexual Misconduct Board</u>. The Sexual Misconduct Board (or the "Board") is a standing group composed of students, faculty and staff appointed by the Vice President, who also appoints the Board Chair. The Board Chair will ensure that all Board members receive annual training in their responsibilities that draws on professional and expert resources.

B. <u>The Hearing Panel</u>. Formal Resolution involves a hearing before a panel (the "Panel") of at least one University student, and at least two University faculty and/or staff who are members of the Board. The Board Chair will select the Panel and will either serve as the presiding chair or will appoint the presiding chair (or, if the Board Chair is unavailable or otherwise unable to serve, the Vice President will select the Panel and a presiding chair).

C.    Investigation.  When the complainant indicates a desire to pursue Formal Resolution, the Dean will prepare and forward the complaint to the Vice President's Office for an investigation by such person or persons (the "Investigators") designated by the Vice President.  The Investigators typically include a trained attorney and a mental health professional, both of whom have received annual training that draws on professional and expert resources.  The Investigators are neutral fact-finders, who, during the course of the investigation, typically conduct interviews with the complainant, the accused student and each third-party witness (including expert witnesses, where applicable); visit and take photographs at each relevant site; and, where applicable, coordinate with law enforcement agencies to collect and preserve relevant evidence.  The completed investigative report (the "Investigative Report") includes, among other things, summaries of interviews with the complainant, the accused student and each third-party witness; summaries of interviews with expert witnesses, where applicable; photographs of the relevant site(s) and related logs; other photographic, electronic and forensic evidence; and a detailed written analysis of the events in question.  A typical investigation will be completed within sixty (60) days, if not sooner.  The Investigative Report will be distributed, concurrently, to both of the parties and to the Dean. If a hearing is held, the Board Chair and the Panel will also be provided with a copy of the Investigative Report.

D.    Granting/Denying a Hearing. The Investigators will determine whether or not there is good cause to grant a hearing.  If the Investigators determine that a hearing should be granted, notice of that determination will be delivered, concurrently, to both parties and to the Dean. The Investigators may specify which alleged violations of this Policy (i.e., which type or types of Sexual Misconduct) and, if applicable, which other, related alleged misconduct (as described in Section II.D, above) will go forward for a hearing. Concurrently with the delivery of the Investigators' notice of the determination that a hearing should be granted, the Investigators may, where the alleged Sexual Misconduct is sufficiently serious in their reasonable discretion, cause a transcript hold to be placed on the accused student's transcript pending final resolution of the complaint.

A complainant whose request for a hearing is denied, and an accused student whose transcripts are subject to a hold, each may appeal that decision to the Vice President, whose decision will be final.

E.    Complainant Changes Election to Informal Resolution; Accused Student Elects to Accept Responsibility.  After reviewing the Investigative Report, the complainant may decide to elect Informal Resolution instead of Formal Resolution, by making such request to the Dean prior to the hearing date.  At any time prior to the hearing, the accused student may

10

elect to acknowledge his or her actions and take responsibility for the alleged Sexual Misconduct. In such cases, the Board Chair will propose a resolution to the complaint and a sanction. If both the complainant and the accused student agree to such proposed sanction, the complaint is resolved without a hearing and without any further rights of appeal by either party. If either the complainant or the accused student objects to such proposed sanction, a hearing before the Board will be convened for the exclusive purpose of determining a sanction, which determination is subject to appeal pursuant to Section IV.H.14 hereof. For purposes of this sanction hearing, all of the other provisions of this Policy relating to the imposition of a sanction for Sexual Misconduct shall apply (including, for example, the provision for an Impact Statement, and the provisions governing the effective date of the sanction).

F.   <u>Notice of Hearing; Challenges to Panel; Delivery of Notice</u>.   If a hearing is granted by the Investigators (or by the Vice President, on appeal), the Board Chair will commence the Formal Resolution process by providing written notice to both parties (the "Notice of Hearing") stating: (1) the date, time, and place of the pre-hearing meeting at which preliminary matters will be discussed, as more fully addressed in Section IV.H.1, below; and (2) the names of the Board members selected to serve as the Panel. A party wishing to challenge the participation of any Panel member must notify the Board Chair, in writing, within ten (10) calendar days of receipt of the Notice of Hearing, stating the specific reason(s) for the objection. Failure to do so will constitute a waiver of any objection to the composition of the Panel. The Chair will determine whether the challenge has merit and reserves discretion to make changes in the Panel composition at any time. The Notice of Hearing will be delivered, at the Board Chair's discretion, by email or in person, and will be considered effective immediately upon receipt. The hearing will take place promptly following delivery of the Notice of Hearing. The parties are expected to cooperate in the scheduling of the hearing. If either party fails to appear at the scheduled hearing, the Board Chair may postpone the proceedings or direct that the Panel proceed and determine the complaint on the basis of the Investigative Report and any other available information, provided the absent party was duly notified of the scheduled hearing date, as outlined in this section.

G.   <u>Advisors to the Parties</u>.   Both the complainant and the accused student may have advisors present to support and assist them during the pre-hearing, hearing, and appeal stages of the Formal Resolution process. The Board Chair will appoint to each party an advisor who has completed the training required by the University; however, a student may select and arrange for a secondary advisor of his or her choosing, including another student, but such secondary advisor may not be an attorney (see Section IV.H.4, below, for a description of the role outside counsel may play

during a hearing). The Board Chair may disallow a particular advisor in cases where such advisor might be a witness or where such advisor's presence, in the Board Chair's sole determination, would be obstructive to the process or for other good cause. An advisor may not direct questions to the Panel or witnesses at the hearing, but may suggest questions in writing to the Panel and may consult with the student that he or she is assisting. The Board Chair will not allow an advisor's presence to inhibit the parties' sharing of information or the conduct of the hearing.

H.   Hearing Procedures:

1.   Pre-Hearing Submissions. The parties will provide the Board Chair (or the Panel's presiding officer, hereinafter included within the term "Chair") with a list of witnesses they propose to call, and copies of documents and a description of any other information they propose to present at the hearing, on or before a date set by the Chair. Evidence of the complainant's past sexual history will not be permitted at the hearing unless it is relevant to the complaint. The Chair will provide each party with a copy of the list of witnesses, and identification or copies of documents or other information submitted by each party. In the absence of good cause, as determined by the Chair in his or her sole discretion, the parties may not introduce witnesses, documents, or other information at the hearing that were not provided to the Chair by this deadline. The parties are also responsible for the attendance of their witnesses at the hearing.

2.   Pre-Hearing Meeting and Determination of Complaint and Witnesses. The Chair will schedule a pre-hearing meeting prior to the hearing date. At the meeting, the Chair will review hearing procedures with the parties, separately or jointly, at the discretion of the Chair. The Chair will also review the complaint of alleged Sexual Misconduct (and related misconduct, if applicable), and review the parties' respective lists of proposed witnesses to assist them in eliminating redundant information. The University reserves the right, through the Chair, (a) to add to or modify the alleged violations specified by the Investigators, pursuant to Section IV.D, above, at the pre-hearing meeting, and (b) to add witnesses to the witness lists at the pre-hearing meeting and/or at the hearing.

3.   Pre-Hearing Discussion. Once a Board member has been named to a Panel, he or she may not publicly or privately discuss the merits of the complaint with anyone not involved in the proceedings, with the parties themselves, or with anyone acting on the behalf of the parties. The Chair will provide the panelists with a copy of the Notice of Hearing, the Investigative Report, and the list of witnesses submitted

by the parties with an instruction to avoid any public or private discussion of the merits of the complaint.

4. <u>Legal Counsel</u>. Legal counsel may be present at the hearing on behalf of either party. Such counsel may privately consult with and advise the parties during the proceeding but may not examine witnesses or otherwise directly participate on behalf of either party.

5. <u>Panel's Counsel</u>. The Chair and Panel may seek advice from the University's Office of the General Counsel throughout the hearing process on questions of law and procedure; however, factual determinations are the domain of the Panel.

6. <u>Conduct of the Hearing</u>. The hearing will not follow a courtroom model, and formal rules of evidence will not be observed. Accordingly, for example, the parties may elect to rely upon the statements of witnesses contained in the Investigative Report if such witnesses are unavailable to attend the hearing. The Chair will determine the order of the witnesses and resolve any questions of procedure arising during the hearing. The parties are responsible for ensuring that their proposed witnesses are present. Members of the Panel will review in advance of the hearing all the written materials provided to them by the Chair in accordance with Section IV.H.1, above. The parties will have received or been provided the opportunity to review and copy these materials during earlier stages of the pre-hearing process. The parties will be expected not to repeat undisputed details or non-material circumstances that would merely duplicate information contained in the Investigative Report or in other written materials. Only the Chair and the Panel may question the individual parties and any witnesses, unless permission is granted by the Chair to modify the questioning process. Both parties or their advisors may ask the Chair to pose additional questions or inquire further into specific matters by submitting these requests in writing or orally, at the discretion of the Chair. If necessary, a brief break may be granted to allow both parties an opportunity to prepare and submit such requests. The Chair is empowered to disallow or reframe any questions that are irrelevant or redundant. After all witnesses have been questioned, each party may make a closing statement and request a short recess to prepare it. If the Panel determines that unresolved issues exist that would be clarified by the presentation of additional information, the Chair may suspend the hearing and reconvene it in a timely manner to receive such additional information. A delay may not be based on the failure of witnesses to appear without good cause or on the proposed introduction of documents or other information that should have been presented at the pre-hearing meeting.

7. <u>Testimony or Participation by the Accused</u>. The accused student has the option not to testify; however, the exercise of that option will not preclude the Panel from proceeding and determining the complaint on the basis of the Investigative Report and other available information. In addition, as indicated in Section IV.F, above, if the accused student fails to appear at the hearing, after being duly notified of its place and time, the Chair may postpone the proceedings or direct that the Panel proceed and determine the complaint on the basis of the Investigative Report and other available information.

8. <u>Testimony by Closed-Circuit Technology</u>. Upon timely request by a party or witness, the University may be able to provide for testimony by closed-circuit technology in appropriate circumstances, including where parties or witnesses are otherwise unable to participate in the hearing. The availability of testimony by closed-circuit technology will be at the sole discretion of the Chair.

9. <u>Recording</u>. The Chair will arrange for the hearing to be recorded and may arrange for the preparation of any transcript of the recording that he or she deems appropriate or which a party requests (upon prompt payment by the requester of the transcription fee). Such recording will be arranged through the Vice President's Office.

10. <u>Standard of Proof</u>. The Department of Education's Office of Civil Rights has interpreted Title IX to require schools to evaluate evidence of alleged Sexual Misconduct under a "*preponderance of the evidence*" standard and that is the standard adopted by this Policy. A preponderance of the evidence means that the information shows that it is "*more likely than not*" that the accused student violated this Policy. In the context of a hearing hereunder, the accused student will be found to be responsible for the alleged Sexual Misconduct if the Panel, by a unanimous vote, concludes that such Sexual Misconduct more likely than not occurred based upon careful review of all information presented. In making its determination, the Panel shall carefully consider all of the evidence presented and follow the procedures stated in this Policy in order to ensure as fair a hearing as possible for all parties.

11. <u>Impact Statement</u>. If the Panel determines that the accused student is responsible for Sexual Misconduct, <u>i.e.</u>, that the Sexual Misconduct more likely than not occurred, the complainant may present the Panel with a statement recommending a sanction (the "Impact Statement"). The responsible student will be provided an opportunity to respond to the Impact Statement. The Panel is not bound by these statements in determining a sanction. Witnesses other than the parties normally are

not permitted at the Impact Statement phase of the hearing; however, the Chair reserves discretion to permit the presence of other persons.

12. Sanction. The Panel is required to consider suspending or expelling any student found responsible for Sexual Misconduct; however, the Panel may impose any sanction that it finds to be fair and proportionate to the violation. In determining an appropriate sanction, the Panel may consider any record of past violations of the Standards of Conduct, as well as the nature and severity of such past violation(s). The Panel will also consider, as part of its deliberations, whether the sanction will (a) bring an end to the violation in question, (b) reasonably prevent a recurrence of a similar violation, and (c) remedy the effects of the violation on the complainant and the University community. The sanction decision will be made by the Panel by majority vote. Any sanction imposed will be explained or supported in the written decision of the Panel.

13. Decision. The decision of the Panel, including the sanction, if applicable, will be announced to both parties, concurrently, by the Chair at the conclusion of the hearing. In addition, the Chair will provide a copy of the Final Outcome Letter described in Section 17, below, to both parties, concurrently, and to the Dean and the Vice President, within ten (10) calendar days following the conclusion of the hearing (or such longer time as the Chair may for good cause determine).

14. Appeals. Either party may appeal the Panel's decision to the Judicial Review Board by notifying the Chair of the University's Judicial Review Board in writing within fourteen (14) calendar days of the date of the Panel's decision. All appeals will be governed by the procedures of the Judicial Review Board.

15. Effective Date of Sanction. Sanctions imposed by the Panel are not effective until the resolution of any timely appeal of the decision to the University's Judicial Review Board. However, if advisable to protect the welfare of the complainant or the University community, the Panel may determine that any probation, suspension, or expulsion be effective immediately and continue in effect until such time as the Vice President may otherwise determine. The Vice President may suspend the determination pending exhaustion of any appeals by the accused student pursuant to Section IV.H.14, above, or may allow the accused student to attend classes or to engage in other activity on a supervised or monitored basis, or may make such other modifications to the determination as may be advisable in the sole discretion of the Vice President. The Vice President's decision may not be appealed.

16. <u>Transcript Notation in Cases of Suspension or Expulsion</u>. If the Panel imposes a sanction of suspension or expulsion, then, following exhaustion of any appeals by the accused student pursuant to Section IV.H.14, above, the Board Chair will notify the University Registrar to place a notation on the student's transcript reading "Disciplinary Suspension" or "Disciplinary Expulsion," as the case may be.

17. <u>Privacy of the Hearing Process; Final Outcome Letter</u>. In order to comply with FERPA and Title IX and to provide an orderly process for the presentation and consideration of relevant information without undue intimidation or pressure, the hearing process is not open to the general public. Accordingly, documents prepared in anticipation of the hearing (including the Investigative Report, the Notice of Hearing, and the pre-hearing submissions referenced in Section IV.H.1, above), documents, testimony, or other information introduced at the hearing, and any transcript of the hearing itself, may not be disclosed outside of the hearing proceedings, except as may be required or authorized by law.

In addition to complying with Title IX and FERPA, the University is required to comply with the federal Clery Act. Under the Clery Act, both the complainant and the accused student must be informed of the hearing outcome, and the University may not impose any limitations on the re-disclosure of this information. Accordingly, following the hearing, the Panel will issue a written decision letter (the "Final Outcome Letter"), *concurrently* to *both* the accused student and the complainant. The Final Outcome Letter will set forth, as required by the Clery Act, the name of the accused student; the violation(s) of this Policy for which the accused student was found responsible, if any; any essential findings supporting the Panel's decision on the issue of responsibility; and the sanction imposed, if any. University policy neither encourages nor discourages the further disclosure of the Final Outcome Letter by either the complainant or the accused student. The University acknowledges that sharing the Final Outcome Letter with others, including family, friends, legal counsel, mental health professionals, and sexual assault advocates or victims, may be a critically important part of a student's healing process.

## V.   INFORMAL RESOLUTION

A complainant who wishes to file a formal complaint with the Dean's Office but who does not wish to pursue Formal Resolution may request a less formal proceeding, known as "Informal Resolution," as more particularly described in this Section.

Although less formal than Formal Resolution, Informal Resolution is an appropriate resolution process; it is not mediation. The accused student is expected to attend the Informal Resolution proceeding, but is not required to participate.

A. Purpose of Informal Resolution. Informal Resolution provides an opportunity for the complainant to confront the accused student, in the presence of, and facilitated by, a presiding officer, as described in Section V.B, below, and to communicate his or her feelings and perceptions regarding the incident, the impact of the incident, and his or her wishes and expectations regarding protection in the future. The accused student will have an opportunity to respond.

B. Advisors; Presiding Officer. The complainant and the accused student each may bring an advisor to the Informal Resolution. Advisors are assigned and subject to the same restrictions set forth for advisors in Formal Resolution, outlined above. The Board Chair or a designee of the Chair will preside over the Informal Resolution, and may elect to be assisted by another member of the Board or senior staff of the Dean's Office.

C. Informal Resolution Where Accused Student Acknowledges Responsibility. If, during the course of the Informal Resolution, the accused student elects to acknowledge his or her actions and take responsibility for the alleged Sexual Misconduct, the Informal Resolution will be concluded and the Board Chair will propose a sanction. If both the complainant and the accused student agree to such proposed sanction, the complaint will be resolved without any further rights of appeal by either party. If either the complainant or the accused student objects to such proposed sanction, a hearing before the Board will be convened for the exclusive purpose of determining a sanction, which determination is subject to appeal pursuant to Section IV.H.14 hereof. For purposes of this sanction hearing, all of the other provisions of this Policy relating to the imposition of a sanction for Sexual Misconduct shall apply (including, for example, the provision for an Impact Statement, and the provisions governing the effective date of the sanction).

D. Informal Resolution Where Accused Student Contests Responsibility. If the accused student contests the complaint of alleged Sexual Misconduct, the Dean may nevertheless impose a protective order agreed upon by the parties, or (with or without such agreement) based on information derived from the Informal Resolution proceedings, taken together with any other relevant information known to the University at the time of the Informal Resolution.

E. Election of Formal Resolution. The University or the complainant may, at any time prior to the conclusion of the Informal Resolution, elect to end

such proceedings and initiate Formal Resolution instead.  In such cases, statements or disclosures made by the parties in the course of the Informal Resolution may be considered in the subsequent Formal Resolution.

F.    <u>Privacy of Informal Resolution</u>.   In order to promote honest, direct communication, information disclosed during Informal Resolution must remain private while the Informal Resolution is pending, except where disclosure may be required by law or authorized in connection with duties on behalf of the University.

## VI.    AMENDMENTS

This Policy may be amended, in writing, by the President or the President's designee at any time.

Adopted:


_Teresa A. Sullivan_                                        _7/8/2011_
Teresa A. Sullivan, President                        Date

# Exhibit B

```
 1

 2              HEARING CHAIR:   Thank you.

 3              I'm going to ask that you go to your

 4   respective rooms while I look over my notes.  We'll

 5   give you a call as to coming up for a decision.

 6              MR.            :   Thank you, Your Honor.

 7              (A recess was taken between 5:18 and

 8   5:44 p.m.)

 9              MS.     :   Ms.           has decided that she

10   doesn't want to be present in the room for the decision

11   that's going to be provided by the Chair.  So her

12   advisor, as well as her counsel are present, and will

13   convey the decision of the Chair to her after the

14   conclusion of these proceedings.

15              HEARING CHAIR:   I will say that this is a very

16   difficult case.

17              Under the requirements of the Office of Civil

18   Rights and the Department of Education, the weakest

19   standard of proof is all that is required, which means

20   that it's more likely than not, which means it tips the

21   scale a little bit.  You know, clear and convincing, a

22   reasonable doubt, they tip the scale much more, but

23   here, it just has to be tipped very slightly.

24              The definitions which guide me in my

25   decision-making as to whether there is or is not a
```

1    responsibility for what's -- for the charge here, which

2    is non-consensual sexual intercourse, I'm guided by

3    both the definition of effective consent and

4    incapacitation.

5            "Effective consent" means words or actions

6    that show a knowing and voluntary agreement to engage

7    in mutually-agreed-upon sexual activity.  It cannot be

8    gained by force -- there was no force here, of course

9    -- by ignoring or acting in spite of the objections of

10   another -- we also don't have that -- or by taking

11   advantage of the incapacitation of another, where the

12   accused student knows or reasonably should have known

13   of such incapacitation.  That's what we're talking

14   about in this case.

15           Effective consent is also absent where the

16   activity in question exceeds the scope of the effective

17   consent previously given.

18           "Incapacitation" means the physical and/or

19   mental inability to make informed, rational judgments.

20   States of incapacitation include, without limitation,

21   sleep, blackouts, and flashbacks.

22           Where alcohol was involved, one does not have

23   to be intoxicated or drunk to be considered

24   incapacitated.  Rather, incapacitation is determined by

25   how the alcohol consumed impacts a person's

CONFIDENTIAL - ATTORNEY'S EYES ONLY
1/20/2016

SMB Hearing Panel

CONFIDENTIAL - ATTORNEY'S EYES ONLY
Page 215

1    decision-making capacity, awareness of consequences,

2    and ability to make informed judgments.

3           The question is whether the accused student

4    knew, or a sober, reasonable person in the position of

5    the accused student should have known that the

6    complainant was incapacitated.

7           Because incapacitation may be difficult to

8    discern, students are strongly encouraged to err on the

9    side of caution.  That is, when in doubt, assume that

10   another person is incapacitated and therefore, unable

11   to give effective consent.

12          So I have those definitions, with also the

13   standard of proof that I have to engage in here.

14          I want to reiterate that I am to give equal

15   weight to live and written testimony, under the

16   requirements that I have to deal with.

17          There are three things here, in my view, which

18   tip the balance, make it slightly more likely than not

19   with regard to effective consent, which is the only

20   thing that's here for me.

21          The first is that they were together while she

22   consumed alcohol at two separate locations; ▓▓▓▓

23   testimony regarding drinking at ▓▓▓ and how she

24   appeared; and then, ▓▓▓ saying that she was upset

25   immediately after the sexual encounter and speaking

CONFIDENTIAL - ATTORNEY'S EYES ONLY                                    CONFIDENTIAL - ATTORNEY'S EYES ONLY

 1    nonsense, and this was immediately after.

 2          So while I do find responsibility here, I have

 3    to say that there -- this will be reflected by me in

 4    any sanction that I impose, that this is a case that's

 5    very close, but slightly tipped.

 6          So the closeness, there are things which have

 7    been brought out by you, Mr. ███████, specifically

 8    that have indicated some confusion, et cetera, that

 9    will be and can be reflected in the sanction that I

10    impose.

11          So that's where we are at this point.  I do

12    need to hear from her with regard to impact.

13          I do know -- and I know -- I assume there will

14    be some indication that the impact has been strong.

15    That said, however, I still, in my sanction, am to be

16    guided by what's in the policy.

17          So I will, of course, take into account the

18    impact, but my sanction, again, will be guided by

19    what's in the policy and the goals that are stated in

20    the policy.

21          But I do need to hear from her with regard to

22    impact.

23

24

25

# Exhibit C

UNIVERSITY *of* VIRGINIA
## OFFICE *of* EQUAL OPPORTUNITY PROGRAMS
Washington Hall • P.O. Box 400219 • Charlottesville, VA 22904-4219
Phone: 434-924-3200 • TDD: 434-982-HEAR

January 27, 2016

***Personal & Confidential – Via Electronic Delivery***
██████████████

***Personal & Confidential – Via Electronic Delivery***
██████████████

      ***Re:***    ***Final Outcome Letter***
         ████ ***v.*** ████

Dear Ms. ██████████████████:

I write to provide written confirmation of my decision as the external adjudicator in the above-noted case. The hearing was held on January 20, 2016. This hearing was held consistent with the procedures outlined to the parties in correspondence from the University's Title IX Coordinator dated December 11, 2015 and January 14, 2016.

After review of the information presented during the hearing and careful analysis of the investigative report and other written materials, I find the evidence sufficient, by a preponderance of the evidence standard, to support a finding that the Respondent committed Non-Consensual Sexual Intercourse as defined in the 2011 University of Virginia Policy for Student Sexual Misconduct Complaints ("2011 Policy").

In preparation for the hearing, I reviewed and considered the investigators' report and 31 exhibits accompanying the report, which included 21 witness statements, photographs, text messages, Facebook messages, and email correspondence among other documents.

The Complainant, ████████████████, and the Respondent, ████████████████, each presented information to me. I also heard from five (5) witnesses whose testimony was requested by the parties or me: ████████████████, ██████████, ████████████, ████████████, and ████
████. I asked questions of both parties and all witnesses. In addition, both the Complainant and the Respondent had an equal opportunity to ask questions, through me, of the other party and all witnesses.

All parties had a full and fair opportunity to present relevant information, and to be accompanied by their attorneys and advisors at the hearing.[1] In addition, the University's Title IX Coordinator

---

[1] Present at the hearing for the Complainant was her advisor, ████████████, and her attorney, ████████████.
Present at the hearing for the Respondent was his advisor, ████████████, and his attorney, ████████████. The

1

was present to facilitate the hearing, address questions, and assure adherence to the procedures governing this hearing.

**Violation at Issue**

The Respondent was charged with Non-Consensual Sexual Intercourse arising out of events alleged to have occurred between the Complainant and the Respondent during the late evening hours of August 23, 2013, or the early morning hours of August 24, 2013.  The elements of the alleged violation at issue are outlined here[2]:

> **Non-Consensual Sexual Intercourse**: Sexual Intercourse that occurs without Effective Consent.

> **Sexual Intercourse**:  Penetration (anal, oral or vaginal) by a penis, tongue, finger, or an inanimate object.

> **Effective Consent**: Words or actions that show a knowing and voluntary agreement to engage in mutually agreed-upon sexual activity.  Effective Consent cannot be gained by Force, by ignoring or acting in spite of the objections of another, or by taking advantage of the Incapacitation of another, where the accused student knows or reasonably should have known of such Incapacitation.  Effective Consent is also absent when the activity in question exceeds the scope of Effective Consent previously given.

> **Incapacitation**: Physical and/or mental inability to make informed rational judgments.   States of Incapacitation include, without limitation, sleep, blackouts, and flashbacks.   Where alcohol [or other drug] is involved, one does not have to be intoxicated or drunk to be considered Incapacitated.   Rather, Incapacitation is determined by how the alcohol consumed impacts a person's decision-making capacity, awareness of consequences, and ability to make informed judgments.  The question is whether the accused student knew, or a sober, reasonable person in the position of the accused student should have known, that the Complainant was Incapacitated.  Because Incapacitation may be difficult to discern, students are strongly encouraged to err on the side of caution; i.e., when in doubt, assume that another person is Incapacitated and therefore unable to give Effective Consent.  Being intoxicated or drunk is never a defense to a complaint of Sexual Misconduct under this Policy.

---

advisors and attorneys were present and available to the parties at all times during the pre-hearing conferences and the hearing.  Associate University Counsel was present at the hearing.

[2] 2011 Policy § I(B).

**Standard of Review**

I reviewed the evidence pursuant to the preponderance of the evidence standard, which means that the evidence must demonstrate that it is more likely than not that the Respondent was responsible for Non-Consensual Sexual Intercourse as defined in the 2011 Policy.

**Outcome**

I concluded that there was sufficient evidence, by a preponderance of the evidence standard, to support a finding that the Respondent is responsible for Non-Consensual Sexual Intercourse as defined in the 2011 Policy.

**Rationale**

A number of factors informed my finding and determination. First and foremost, is the requirement that I use the preponderance of the evidence standard, which means that a violation is found when the alleged conduct more likely than not occurred. In these proceedings, I am also instructed to give equal weight to written as well as to live testimony. I considered both written and live testimony in rendering this decision.

The parties do not dispute that they had sexual intercourse during the late evening hours of August 23, 2013, or the early morning hours of August 24, 2013, at Complainant's off-Grounds apartment. The issue however is whether a sober, reasonable person in the position of the Respondent should have known that the Complainant was incapacitated and, thus, incapable of giving effective consent. The 2011 Policy definition of incapacitation states: "The question is whether the accused student knew, or a sober, reasonable person in the position of the accused student should have known, that the Complainant was Incapacitated."

I found three factors significant in my determination that the Respondent knew or should have known of Complainant's inability to give effective consent due to her incapacitation as a result of alcohol consumption.

First, the Respondent was with the Complainant while she consumed alcohol at two different locations and had the opportunity to observe the amount and impact of her alcohol consumption. Indeed, Respondent does not dispute that he was in her presence at those two locations.

Second, ▮▮▮▮▮▮▮▮▮, the Complainant's ex-boyfriend, provided testimony regarding the Complainant's level of drinking at the first location when Respondent was also present. Mr. ▮▮▮▮▮▮▮▮ explained that the Complainant appeared intoxicated.  Specifically, Mr. ▮▮▮▮▮▮▮▮ testified that Complainant was "pretty" intoxicated when he got there, and she continued to become more intoxicated and was "slurring" her words.

3

Third, the Complainant's roommate, ███████, provided testimony that he was with the Complainant immediately after the sexual encounter, and she was plainly upset and incoherent. His testimony in this regard was consistent with his statement to the investigators where he noted that she was "speaking complete nonsense."  (See Confidential Final Report at page 12, Ex. 10).

Based on the totality of circumstances, as set forth above, I find that a sober, reasonable person in the position of the Respondent should have known that the Complainant was incapacitated. Although there were signs that the Complainant may have been capable of effective consent (for example, her texting the Respondent regarding unwanted advances by Mr. ███████ and Respondent's testimony that the Complainant was straightening her room before allowing him to enter), I find the greater weight of the evidence supports a finding that the Respondent was present while the Complainant was drinking, that her conduct and behavior were noticeably impaired both before the sexual encounter and after the sexual encounter, and that the Respondent knew, or should have known, that the Complainant was incapacitated and therefore unable to consent.

Accordingly, I find by a preponderance of the evidence that the Respondent committed Non-Consensual Sexual Intercourse.

## Sanction

In consultation with the Title IX Coordinator, I determined that the appropriate sanction is as follows:

- The Respondent's degree has been held since April 30, 2015 and will remain held until the Respondent successfully completes all terms and conditions described in this letter.
- The Respondent will not be permitted on University property except in the case of medical emergency or appointment where the Respondent is seeking or receiving treatment. The Respondent will not be permitted to participate in any University Alumni or Law School events, regardless of their location.

I was guided by Paragraph 12 of the procedures governing this proceeding, which provides  in relevant part:

> The Hearing Chair(s) in consultation with the Title IX Coordinator [is] required to consider a sanction of suspension or expulsion; however, any sanction that is fair and proportionate to the finding of responsibility may be imposed.  In determining an appropriate sanction, any record of past violations of the Standards of Conduct, as well as the nature and severity of such past violation(s) may be considered.  The Hearing Chair(s) in consultation with the Title IX Coordinator will also consider whether the sanction will 1) bring an end to the violation in question, 2) reasonably prevent a

recurrence of a similar violation, and 3) remedy the effects of the
violation on the Complainant and the University community.[3]

Based on my finding, the Respondent, rather than erring on the side of caution, sought sexual
gratification from someone whom he had reason to believe was incapable of giving effective
consent.  This conduct is significant in nature and requires a sanction that both precludes the
Respondent from returning to Grounds and provides appropriate counseling to mitigate the risk
that similar conduct will reoccur. Accordingly, with regard to the considerations to support the
sanction, I find that the eight (8) months that the Respondent's degree has been held plus an
additional period of time to undergo comprehensive counseling and/ or therapy before his degree
can be conferred will satisfy the goals of the sanctioning policy. The Respondent has provided a
psychological evaluation dated June 12, 2015. The evaluation was considered in the sanctioning
decision. Therefore, the Respondent may not be conferred his degree until he has successfully
completed counseling with a licensed treating professional with experience in counseling
individuals regarding healthy sexual relationships, affirmative consent, respect for women, and
sexual assault and other forms of sexual misconduct.  The treating professional must thoroughly
and meaningfully cover these topics with him. The Respondent must submit the curriculum vitae
of the licensed professional for approval by the University to the Title IX Coordinator. While I
defer to the professional to set the ultimate number of necessary sessions, these sessions, at a
minimum, will occur once a week over a period of at least four months from the date of this
decision. Until certification of this counseling has been provided, including a release so that the
University's Title IX Coordinator can speak directly to the treating professional, the
Respondent's degree will remain on hold. Should the professional require treatment longer than
four months, then Respondent's degree will remain on hold until the professional certifies that he
has completed the course of treatment required by the professional.  Lastly, it is expected that the
Respondent will submit a report from his treating professional that details the therapy provided
and the successful completion of all counseling by the Respondent prior to degree conferral.

In addition to this deferral of the degree and counseling requirement, in light of the impact of the
Respondent's action on the Complainant, the Respondent is not permitted on any University
property except in the case of medical emergency or appointment where the Respondent is
seeking or receiving treatment.  Finally, the Respondent will not be permitted to participate or
attend alumni events sponsored by the University or the Law School at any time in the future,
whether on Grounds or in another location.   The Complainant should not have to be limited in
her ability to attend any law school alumni event or University event for fear of encountering the
Respondent.

**Appeal**

Pursuant to the January 15 letter to me from the Title IX Coordinator outlining the procedures
that were applicable in this proceeding, my decision in this matter is final and there is no appeal
right for either party.

---

[3] The procedures with respect to sanctioning were provided to the parties in the January 14, 2016 correspondence
from the Title IX Coordinator.

**<u>Conclusion</u>**

In closing, I would like to express my appreciation to both parties, their advisors, and University officials for their cooperation in resolving this matter.


Sincerely,



External Adjudicator

cc:        █████████, Title IX Coordinator
                            Vice President and Chief Student Affairs Officer
                    University Dean of Students
                  Attorney for the Complainant
                  Advisor for the Complainant
                  Attorney for the Respondent
                  Advisor for the Respondent